Richard J. Bernard
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

Proposed Attorneys for Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>12 BYFIELD, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 10-_____ (RDD) |

# DECLARATION OF JAMES SCHECKTER
# PURSUANT TO LOCAL RULE 1007-2

JAMES SCHECKTER, pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am JAMES SCHECKTER, the Designated Officer of the within debtor and debtor in possession, 12 Byfield, LLC (the "Debtor"), and have personal knowledge, unless otherwise stated, of the facts set forth herein.

2. On the date hereof (the "Petition Date"), the Debtor commenced a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") by filing a voluntary petition for relief with this Court.

3. I submit this Declaration as required by Local Rule 1007-2 and in support of the first-day motions and applications. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, my opinions are based upon my knowledge of the financial condition of the Debtor and the status of

the Debtor's construction project. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

4.  As detailed below, this case was initiated to permit the Debtor to complete the construction of a $10-12 million single family residence so as to maximize the value thereof for the benefit of the Debtor, all of its creditors and its investors. The home is over 90% complete and requires over $2 million for hard and soft construction costs to complete and carry through a reasonable time period to maximize the sale price. USA Bank lured the Debtor into a construction loan, which we knew at that time provided insufficient funding to complete the project, with promises from USA Bank that there will be additional funding when needed. Now that the house is substantially complete and the Debtor needs the promised additional funding, USA Bank has refused to fund the completion of the project and, instead, has threatened foreclosure. Directly and indirectly, I have more than $2.5 million invested in this project and 2 years and 9 months of sweat labor. Foreclosure would result in the waste of a magnificent asset that requires merely 100 days and reasonable funds to complete.

5.  Part I of this Declaration describes business dealings, history, need for chapter 11 relief, and debt and equity structure. Part II summarizes the objectives in this chapter 11 case.

# I.

# BACKGROUND

**Project**

6.  The Debtor was formed in May 2007 to construct a single family residence at the property (the "Property"), 2.69 acres located at 12 Byfield Road, Greenwich, Connecticut.

7.	I identified and purchased the Property, borrowing money from a related company, Mortgage Options. I am the manager of Mortgage Options, which is funded through investments from me and my wife, Susan Scheckter, and unrelated parties.

8.	I developed the plans for the house on the Property. Mortgage Options funded the commencement of this project by advancing $2.5 million as a mortgage loan secured by the Property. Mortgage Options fully funded this loan, the proceeds of which paid for hard and soft costs on this project.

9.	I was introduced to USA Bank in 2007. USA Bank was anxious to loan money and approved a loan to the Debtor. Initially, the Debtor needed a loan of more than $5.5 million (the then maximum loan USA Bank was authorized to provide), which was discussed with USA Bank. The then Chairman of USA Bank told me to make a formal loan request for $5.35 million, just under the bank's authorized limit, which I did for the Debtor. USA Bank approved the Debtor's loan in the amount of $4.8 million. The then USA Bank Chairman told me to enter into the $4.8 million construction loan to get the project started and that there would be more money at the end to make sure it would get finished. Specifically, he advised me that the additional loan would be secured by a second mortgage at the same cost as the first loan and with no additional charges (except for a $500 document fee) and represented that this future second mortgage was part of the original loan. That Chairman has been forced by the FDIC to resign from USA Bank, and his son was permitted to take his position. On July 31, 2007, the Debtor entered the loan with the expectation that, when the project was substantially complete and additional funds were needed, USA Bank would fund more monies under a second mortgage as promised. From the inception of the first loan, there were numerous discussions about this second loan ; however,

USA Bank represented that it wanted the first loan substantially drawn down before it would document and fund the second loan.

10. Susan Scheckter and I, the owners of the Debtor, executed personal guarantees in connection with the USA Bank loan.

11. In closing on the USA Bank loan, I provided USA Bank with full documentation of all expenditures that were funded by Mortgage Options. Based upon these documented expenditures, USA Bank agreed to permit Mortgage Options to retain its mortgage in junior position to USA Bank's mortgage.

12. Upon closing of the USA Bank loan, USA Bank funded an initial disbursement to the Debtor in the amount of $700,000 and was supposed to fund from the loan proceeds an interest reserve account in the amount of $350,000. The interest reserve account was to be maintained at USA Bank in Portchester, New York. There have been a number of issues regarding this interest reserve account, and the Debtor's numerous requests for a full accounting thereof have been ignored by USA Bank.

13. The Debtor used the proceeds from the USA Bank loan to pay for the hard and soft costs associated with the construction project at the Property. Within months after closing the loan, however, USA Bank began playing games with draw requests, delaying inspections and title updates and refusing draws to fund deposits necessary to order materials (changing its initial practice of funding such draws). These changes in the administration of the loan occurred after USA Bank changed its chief loan officer and resulted in delays to the project while interest on the loan continued to accrue. For many months, the Debtor's principals advanced funds for materials so as to minimize USA Bank's disruption of construction. Many times, the

subsequently funded draw was insufficient to repay the Scheckters' advances. The Scheckters have advanced approximately $300,000 without reimbursement during the construction of the project.

14. USA Bank has benefitted from its own delays in the receipt of interest on its loan. At times, USA Bank disregarded the Debtor's specific instructions and funded interest payments to itself by netting these amounts against the Debtor's approved loan draws.

15. The Debtor intends to pursue its litigation claims against USA Bank.

16. The USA Bank loan matured (after exercise of the Debtor's 12 month extension option) on August 1, 2009. At this time, the project was substantially complete. The house is 15,692 square feet, with 6 bedrooms and 7.5 bathrooms, on 2.69 acres, and is currently listed for sale at $11,999,999. The remaining work to complete the house includes the purchase and installation of cabinetry, site work in connection with the retention walls and landscaping, installation of plumbing fixtures, completion of the interconnective lighting system, staining of the floors, completion of trim and mill work, finish of the lower level and final internal and external painting. The Debtor estimates that the hard costs for completion to be approximately $1.5 million and the time to completion to be approximately 100 days (because of lead time to order cabinetry and millwork). The soft costs, primarily interest, are estimated between $500,000 – 1,000,000.

17. For months after loan maturity, the Debtor attempted to engage USA Bank regarding the additional funding as promised when the loan was entered. These discussions were not successful, and, ultimately, USA Bank refused to loan the additional funds to complete the project as it promised.

18. In December 2009, the Debtor retained counsel to assist it in its discussions with USA Bank. Upon the Debtor's retention of counsel, and 5 months <u>after</u> the loan matured, USA Bank reported payment delinquencies on the personal credit histories of James and Susan Scheckter, impairing their credit scores.

19. For several months thereafter, the Debtor continued to negotiate with USA Bank in good faith while searching for alternative financing. The Debtor made several offers regarding payment and treatment of the USA Bank's loan, which offers were rejected. During these "negotiations," USA Bank did not make a single counter proposal until March 26, 2010, the terms of which were too onerous for the Debtor.

20. Since October 2009, actual sales of comparable houses in the immediate vicinity of the Property have occurred at a rate of 1 per month. I am confident that if USA Bank did not delay the completion of this project, the Debtor would have sold this house already. Nevertheless, if the Debtor can complete this project and list the completed house for sale, the house will sell. The Debtor has received some purchase interest to date despite its incomplete state.

**<u>Need For Chapter 11 Relief</u>**

21. In April 2010, the Debtor realized it was at a complete impasse in its attempted negotiations with USA Bank.

22. Work stopped at the Property months ago. The Debtor has no funds available to complete the project and has accrued the approximate amount of $286,000 for goods and services related to the project. The Debtor has a matured senior mortgage (albeit disputed) accruing

interest and threatening foreclosure. The Debtor, however, has equity in the Property, the value of which significantly exceeds USA Bank's disputed first mortgage.

23. Through this chapter 11 case, the Debtor will seek to borrow up to an additional $2 million from a third-party lender, mostly in the form of exit financing, which additional loan will require senior mortgage status. The value of the Property as completed is not less than $10 million. USA Bank has a large equity cushion and, even as primed, would maintain a 68% loan to value ratio. The Debtor's principals will contribute additional equity.

**Debt and Equity Structure**

24. The value of the Property as complete is not less than $10 million.

25. USA Bank holds the first mortgage in the principal amount of $4.8 million, which is subject to dispute.

26. Mortgage Options holds the second mortgage in the principal amount of $2.5 million.

27. Various third party vendors hold unsecured (claims certain of which may file mechanics liens on the Property) totaling the approximate amount of $286,000.

28. James and Susan Scheckter have claims for reimbursement for advances to the Debtor for construction costs totaling the approximate amount of $300,000.

29. James and Susan Scheckter each own 50% of the Debtor.

**Other Disclosures Pursuant to Local Rule**

30. I am not aware of the formation prepetition of any committee of creditors.

31. To the extent of the information available to me at this time, a list of the holders of the 20 largest unsecured claims, excluding insiders, has been filed contemporaneously herewith.

32. USA Bank, c/o Zeisler & Zeisler, P.C., 558 Clinton Avenue, Bridgeport, Connecticut 06605, attention: James G. Verrillo, Esq., asserts a claim for approximately $4.8 million secured by the Property. Mortgage Options asserts a claim for approximately $2.5 million secured by the Property.

33. Subject to approval by the Court, the Debtor has retained Baker & Hostetler LLP as bankruptcy counsel.

34. The Debtor 's financial books and records are located at 16 Dayton Road, Redding, Connecticut.

35. I am not aware of any actions pending against the Debtor; however, USA Bank has threatened a foreclosure action.

# II.

## DEBTOR'S OBJECTIVES IN
## THIS CHAPTER 11 CASE

36. The primary purpose for this chapter 11 filing is to emerge with sufficient funding to complete construction at the Property and sell the Property in an orderly manner to maximize value for the benefit of all parties herein.

37. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge information and belief.

Dated: April 16, 2010

                                               */s/ James Scheckter*
                                               James Scheckter
                                               Designated Officer